UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |
|---|---|
| CELERITY IP, LLC, and INNOVATIVE SONIC LTD., ) ) ) | CIVIL ACTION NO. 2:23-cv-00316 |
| *Plaintiffs*, ) ) ) | |
| v. ) ) | **JURY TRIAL DEMANDED** |
| LG ELECTRONICS, INC. and LG ELECTRONICS U.S.A., INC., ) ) ) | |
| *Defendants*. ) ) | |

**PLAINTIFFS'**
**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Celerity IP, LLC ("Celerity") and Innovative Sonic Ltd. ("ISL") (collectively "Plaintiffs") brings this Complaint for Patent Infringement ("Complaint") and for Jury Trial against LG Electronics, Inc. ("LGE") and LG Electronics U.S.A., Inc. ("LGEUS") (collectively, "LG" or "Defendants"). Celerity alleges as follows:

**THE PARTIES**

1.       Plaintiff ISL is a corporation organized and existing under the laws of the Republic of Mauritius having its principal place of business at 3F., No. 58, Jhouzih Street, Neihu District, Taipei City 114, Taiwan, Republic of China.

2.       ISL is the assignee of U.S. Patent No. 9,979,514 (the "'514 patent") (attached as Exhibit 1), U.S. Patent No. 9,124,558 (the "'558 patent") (attached as Exhibit 2), U.S. Patent No. 8,223,708 (the "'708 patent") (attached as Exhibit 3), U.S. Patent No. 7,664,059 (the "'059 patent") (attached as Exhibit 4), and U.S. Patent No. 8,804,756 (the '756 patent) (attached as Exhibit 5) (collectively, "the Asserted Patents").

3.      Plaintiff Celerity is a corporation organized and existing under the laws of Texas, with its principal place of business at 7160 Dallas Parkway, Suite 235 Plano, TX 75024. Celerity is the exclusive licensing agent with respect to LG for the Asserted Patents with rights to enforce the Asserted Patents.

4.      Defendant LGE is a Korean corporation with a principal place of business at LG Twin Towers, 128 Yeoui-daero, Yeongdungpo-gu, Seoul, 07366, South Korea.

5.      On information and belief, Defendant LGEUS is a Delaware corporation with regular and established places of business within this District at 2153-2155 Eagle Pkwy, Fort Worth, TX 76177 and 14901 Beach St, Fort Worth, TX 76177. *See* Answer at ¶¶ 4, 9, *SpaceTime3D, Inc. v. LG Elecs, Inc.*, No, 2:22-CV-00049-RWS, Dkt. 19 (E.D. Tex. June 20, 2022).

6.      On information and belief, Defendant LGEUS is a wholly owned subsidiary of Defendant LGE. Defendant LGEUS may be served with process through its Texas registered agent, United States Corporation Co.

## JURISDICTION AND VENUE

7.      This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code § 1, *et seq*. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has specific personal jurisdiction over Defendants because Defendants conducted and continue to conduct business in this Judicial District. Celerity's causes of action arose from Defendants' contacts with and activities in the State of Texas and this Judicial District. Upon information and belief, the Defendants have committed acts of infringement within the State of Texas and this Judicial District by, *inter alia*, directly and/or indirectly making, using, selling, offering to sell, and/or importing products that infringe one or more

claims of Celerity's U.S. Patent Nos. 9,979,514; 9,124,558; 8,223,708; 7,664,059; and 8,804,756 within this district. Defendants' infringing acts within this Judicial District give rise to this action and have established minimum contacts with the forum state of Texas.

9.      Defendants conduct and have conducted business in this District and maintain regular and established places of business within this District. For example, Defendants have maintained regular and established places of business with offices and/or other facilities in this Judicial District of Texas at least at 2153-2155 Eagle Pkwy, Fort Worth, TX 76177 and 14901 Beach St, Fort Worth, TX 76177. Defendants placed or contributed to placing and/or induced the placing of infringing products, including, but not limited to, LG's Stylo 6 devices into the stream of commerce, via established distribution channels, knowing or understanding that such products would be sold and used in the United States, including in this Judicial District. On information and belief, Defendants also have derived substantial revenues from infringing acts in this Judicial District, including from the sale and use of infringing products including, but not limited to, LG's Stylo 6 devices.

10.     Defendants have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

11.     Defendants have repeatedly and recently conceded that this Court has personal jurisdiction over it, in other patent infringement actions related to consumer electronic devices. *See e.g., SpaceTime3D, Inc. v. LG Elecs, Inc.*, No, 2:22-CV-00049-RWS (E.D. Tex. June 20, 2022), Dkt. 19 at ¶ 8 (In a recent patent infringement case regarding LGE's accused smartphones, LGE stated that "LGE does not contest that the Court has personal jurisdiction over LGE Inc. or LGEUS for the purposes of this particular action."); *WFR IP LLC v. LG Elecs.*, No.

2:22-CV-00245-RWS-RSP (E.D. Tex. Nov. 23, 2022), Dkt. 16 at ¶ 5. Other patent infringement

actions against LG in this District include actions related to smartphones. *See WFR IP LLC v. LG*

*Elecs.*, No. 2:22-CV-00245-RWS-RSP (E.D. Tex. Nov. 23, 2022), Dkt. 16 at ¶¶ 12-14.

12.     Venue in this Judicial District is proper as to Defendant LGE under 28 U.S.C. §

1391(c)(3) because LGE is a foreign corporation and venue for a foreign corporation is proper in

any district in the United States.  28 U.S.C. § 1391(c)(3) ("a defendant not resident in the United

States may be sued in any judicial district"); *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir.

2018) (affirming that "a foreign corporation is subject suit in any judicial district").

13.     Venue in this Judicial District is also proper as to Defendant LGEUS under 28

U.S.C. §§ 1391(b)-(c) and 1400(b) because it has (1) committed acts of direct and indirect patent

infringement in this Judicial District by, *inter alia*, making, using, selling, offering to sell, or

importing products that infringe one or more claims of U.S. Patent Nos. 9,979,514; 9,124,558;

8,223,708; 7,664,059; and 8,804,756, and inducing and contributing to such infringement, as

explained above with respect to personal jurisdiction; and (2) has a regular and established place

of business in this Judicial District, at least at 2153-2155 Eagle Pkwy, Fort Worth, TX 76177 and

14901 Beach St, Fort Worth, TX 76177. *See In re Cray Inc.*, 871 F.3d 1355, 1362-63 (Fed. Cir.

2017); https://www.bbb.org/us/tx/fort-worth/profile/electronic-equipment-repair/lg-electronics-

0825-235972227 (Better Business Bureau listing for LG Electronics at 2155 Eagle Pkwy, Fort

Worth, TX 76177-2311);

https://taxweb.dentoncounty.gov/Accounts/AccountDetails?taxAccountNumber=657779DEN

(2022 Denton county tax records showing that LG maintains an "electronics warehouse" at

14901 Beach St, Fort Worth, TX 76177).  For example, publicly available information indicates

that LG performs engineering, assembly, distribution, and more in this district.  *See, e.g.*,

https://www.indeed.com/cmp/Lg-Electronics/reviews?fcountry=US&floc=Fort+Worth%2C+TX (hiring website);

https://www.simplyhired.com/company/LG%20Electronics/?l=Fort+Worth%2C+TX (hiring website).

14.     Defendants have also conceded that venue is proper in this district in other recent patent infringement actions. *See e.g., SpaceTime3D, Inc. v. LG Elecs, Inc.*, No, 2:22-CV-00049-RWS, Dkt. 19 (E.D. Tex. June 20, 2022) at ¶¶ 18-19 (In a recent patent infringement case regarding LGE's accused smartphones, LGE stated that "LGE does not contest that the venue is proper in this District"); *WFR IP LLC v. LG Elecs.*, No. 2:22-CV-00245-RWS-RSP (E.D. Tex. Nov. 23, 2022), Dkt. 16 at ¶ 6; *Arigna Tech. Ltd., LG Elecs., Inc.*, No. 2:21-cv-00377, (E.D. Tex. Jan. 26, 2022) Dkt. 24 at ¶¶ 13-14; *Hardin v. LG Elecs., Inc.*, No. 2:21-cv-00289, (E.D. Tex. Nov. 22, 2021) Dkt. 14 at ¶ 6; *Seven Networks, LLC v. LG Elecs., Inc.*, No. 2:21-cv-88, (E.D. Tex. June 7, 2021) Dkt. 12 at ¶ 5.

## **FACTUAL BACKGROUND**

15.     Innovative Sonic Ltd. is the assignee of each Asserted Patent. On June 30, 2021, Celerity became the exclusive licensing agent for IS's portfolio of patents relating to telecommunication standards such as 4G and 5G.

16.     IS owns a substantial portfolio of patents commercially essential to various 3GPP standards, including 4G/LTE.

17.     Each of the Asserted Patents generally relates to various functional operations of 4G-compliant devices that allow the devices to operate within a 4G network and allows users to communicate over 4G networks.

18.     The '514 patent, titled "Method and Apparatus for Handling HARQ Process of Semi-Persistent Scheduling," relates to avoiding unexpected data combinations in a hybrid

automatic repeat request (HARQ) process.  More specifically, the '514 patent relates to techniques for handling a HARQ process for semi-persistent scheduling in a user equipment of a wireless communication system.

19.     The '558 patent, titled "Method and Apparatus of Handling Data Decryption for a Packet Data Convergence Protocol Layer in a Wireless Communication System," relates to resetting security variables related to the packet data convergence protocol (PDCP).  More specifically, the '558 patent relates to handling data decryption for a PDCP layer of a user equipment to better facilitate a handover procedure of the user equipment in a wireless communication system from one base station (a source base station) to another base station (a target base station) to reduce failures in deciphering security variables by resetting the security variables after receiving all packets from the source base station during the handover procedure.

20.     The '708 patent, titled "Method and Apparatus for Handling Scheduling Information Report," relates to how a Medium Access Control (MAC) layer prioritizes buffer status reports (BSR) and Power Headroom Reports (PHR).  More specifically, the '708 patent relates to techniques for handling scheduling information report in a user equipment (UE) of a wireless communication system.

21.     The '059 patent, titled "Error Handling in a Wireless Communications System," relates to detecting that an out of range packet has been received.  More specifically, the '059 patent relates to techniques for detecting an erroneous sequence number in a status report in a wireless communications system.

22.     The '756 patent, titled "Method and Apparatus for Improving Interaction Between Scheduling Request Procedure and Random Access Procedure," relates to deactivating semi-persistent scheduling resources when repeat transmissions of scheduling requests exceed a

threshold.  More specifically, the '756 patent relates to techniques for improving interaction between a scheduling request procedure and a random access procedure in a user equipment (UE) of a wireless communication system.

23.    ETSI maintains an "Intellectual Property Rights Policy" ("IPR Policy") that governs the disclosure of IP during the development of ETSI standards. IS disclosed each of the Asserted Patents pursuant to an applicable ETSI IPR Policy.

24.    As of August 2005, ETSI's IPR Policy dated November 22, 2000 ("2000 IPR Policy"), was in effect.  Pursuant to the 2000 IPR Policy, IS's predecessor in interest for the '059 patent submitted an "IPR Information Statement and Licensing Declaration" on August 15, 2005, declaring the family of the '059 patent.

25.    As of July, 2011, ETSI's IPR Policy dated March 29, 2007 ("2007 IPR Policy"), was in effect. Pursuant to the 2007 IPR Policy, on July 12, 2011, IS submitted an "IPR Information Statement and Licensing Declaration" which declared the families of the '514 patent, the '558 patent, the '708 patent, and the '756 patent.

26.    As of December 2013, ETSI's IPR Policy dated March 20, 2013 ("2013 IPR Policy"), was in effect.

27.    Pursuant to each of the 2000 IPR Policy, the 2007 IPR Policy, and the 2013 IPR Policy, all published ETSI standards include information pertaining to essential IPR, including all IP that has been declared essential:

> **7  Information on IPR by ETSI**
>
> 7.1   Any published STANDARD or TECHNICAL SPECIFICATION shall include information pertaining to ESSENTIAL IPRs which are brought to the attention of ETSI prior to such publication.
>
> 7.2   ETSI shall establish appropriate procedures to allow access to information at any time with respect to ESSENTIAL IPRs which have been brought to the attention of ETSI.

(2000 IPR Policy)

| | |
|---|---|
| **7** | **Information on IPR by ETSI** |
| 7.1 | Any published STANDARD or TECHNICAL SPECIFICATION shall include information pertaining to ESSENTIAL IPRs which are brought to the attention of ETSI prior to such publication. |
| 7.2 | ETSI shall establish appropriate procedures to allow access to information at any time with respect to ESSENTIAL IPRs which have been brought to the attention of ETSI. |

(2007 IPR Policy)

| | |
|---|---|
| **7** | **Information on IPR by ETSI** |
| 7.1 | Any published STANDARD or TECHNICAL SPECIFICATION shall include information pertaining to ESSENTIAL IPRs which are brought to the attention of ETSI prior to such publication. |
| 7.2 | ETSI shall establish appropriate procedures to allow access to information at any time with respect to ESSENTIAL IPRs which have been brought to the attention of ETSI. |

(2013 IPR Policy)

28.     ETSI members, and the public, can crosscheck the ETSI database for IP that has been declared essential to the ETSI standards: https://ipr.etsi.org/.

29.     Each published ETSI standards document contains a disclaimer regarding the fact that there are essential and potentially essential patents that may be implicated by the standards, and further directs all interested parties to the aforementioned ETSI IPR database where one can search to confirm whether such essential IPR exists:

| **3GPP TS 36.321 version 14.13.0 Release 14** | **2** | **ETSI TS 136 321 V14.13.0 (2020-11)** |
|---|---|---|

# Intellectual Property Rights

**Essential patents**

IPRs essential or potentially essential to normative deliverables may have been declared to ETSI. The information pertaining to these essential IPRs, if any, is publicly available for **ETSI members and non-members**, and can be found in ETSI SR 000 314: *"Intellectual Property Rights (IPRs); Essential, or potentially Essential, IPRs notified to ETSI in respect of ETSI standards"*, which is available from the ETSI Secretariat. Latest updates are available on the ETSI Web server (https://ipr.etsi.org/).

30.     LG is also a member of ETSI, as evidenced by the participation of at least five LG subsidiary entities in ETSI,[1] and participates in ETSI working groups where standards are discussed and developed in collaboration with other ETSI members. On information and belief, LG, as a participating and contributing member of ETSI, was aware of patents declared as essential to any ETSI standard, including IS's patents, because the purpose of the IPR Policy is for ETSI members to have notice of potentially essential IP.

31.     On information and belief, LG also prosecutes its own patents directed to technology relating to cellular telecommunication networks and associated handheld devices. On information and belief, LG has had awareness of IS's declared patents, including the Asserted Patents, due to LG's citations of IS patents during LG's prosecution of its own patent portfolio. Specifically, LG has cited at least the '708, '059, and '756 patents in information disclosure statements submitted to the USPTO during prosecution of LG's own patents.

32.     In addition to LG's actual notice of the Asserted Patents due to IS's public disclosure of its essential patents through ETSI and LG's active participation in ETSI, LG has been on actual notice of the Asserted Patents through extensive communications with IS and Via Licensing Corporation ("Via"). IS was a licensor member of Via's LTE patent licensing pool.[2]

33.     On information and belief, as part of Via's engagement with LG, sometime in mid-August 2018, Via sent LG numerous claim charts demonstrating infringement by LG of patents owned by IS. On information and belief, those charts include EP2134132 (European counterpart for the '708 patent), CN101715215 (Chinese counterpart for the '756 patent), and CN101662348 (Chinese counterpart for the '514 patent).

---

[1] The five LG entities include LG Electronics Deutschland, LG Electronics Finland, LG Electronics France, LG Electronics Polska, and LG Electronics UK. *See* https://www.etsi.org/membership (last visited March 30, 2023).
[2] In April 2022, Via announced that its LTE licensing pool would wind down. The Via LTE pool has since ceased operations.

34.     On August 15, 2018, IS sent LG a letter notifying LG that IS owns a portfolio of patents relevant to the 4G standard ("First Letter"). The First Letter was accompanied by a list of IS's 4G assets and explained that all of LG's 4G compliant devices infringe IS's 4G assets. The First Letter invited LG to license IS's essential 4G assets and informed LG that the terms IS offered were consistent with FRAND.  The First Letter specifically identified all of the Asserted Patents in an exhibit by application number and patent number.

35.     LG did not respond to IS's First Letter.

36.     On September 12, 2018, IS sent a follow up letter to LG ("Second Letter").

37.     On February 18, 2019, IS sent LG an excel spreadsheet containing all of IS's 4G patent assets organized by family.

38.     On March 20, 2019, IS sent LG numerous claim charts, including claim charts demonstrating how LG's 4G compliant devices directly and indirectly infringe each of the '514 patent, '558 patent, and '059 patent.

39.     On May 28, 2019, IS sent LG additional claim charts demonstrating how LG's 4G compliant devices directly and indirectly infringe, including a claim chart for EP2134132, which is the European counterpart for the '708 patent. The charted claim for EP2134132 provided to LG is substantially similar to the independent method claim of the '708 patent.

40.     LG has sold at least the 4G compliant devices listed in Exhibit 6 ("LG Devices"), each of which infringed and infringes each of the Asserted Patents because the LG Devices were and are compliant with the 4G/LTE ETSI standard and supported all applicable features embodied in or otherwise covered by the Asserted Patents.

41.     LG represents that its products implement the 4G/LTE standard. For example, LG's Stylo 6 smartphone is 4G/LTE compliant:



*See* LG Stylo 6 Specifications & Features 3 (2020),

https://www.lg.com/us/support/products/documents/LGSpecSheet_Regional-

Carriers_Stylo%206_082720.pdf.

## <u>COUNT I</u>

### <u>DEFENDANTS' INFRINGEMENT OF U.S. PATENT NO. 9,979,514</u>

42.     Celerity restates and incorporates by reference all of the allegations made in the

preceding paragraphs as though fully set forth herein.

43.     Celerity is the owner, by assignment, of U.S. Patent No. 9,979,514. A true copy of

U.S. Patent No. 9,979,514 granted by the U.S. Patent & Trademark Office is attached as Exhibit

1.

44.     The '514 patent is valid, enforceable, and was duly issued in full compliance with

Title 35 of the United States Code.

45.     LG has directly infringed, literally or under the doctrine of equivalents, one or

more claims of the '514 patent by making, using, importing, selling, and/or offering for sale in

the United States LG's cellular devices that are 4G/LTE compliant, in violation of 35 U.S.C. §

271(a).

46.     On information and belief, LG has had knowledge of the '514 patent and its

application to LG's 4G compliant devices and thus knew of LG's infringement, since July 12,

2011 when IS disclosed the '514 patent family to ETSI. LG had further knowledge of LG's

infringement of the '514 patent at least as early as August 15, 2018, when LG received the First

Letter explicitly identifying the '514 patent. LG had further knowledge of LG's infringement of

the '514 patent at least through claim charts provided to LG by Via and IS.

47.     LG has also indirectly infringed, literally or under the doctrine of equivalents, the

'514 patent because LG, with knowledge of the '514 patent, induced and/or contributed to the

direct infringement of the '514 patent by its customers, subsidiaries, retailers, cellular network

providers, and/or other end users of the LG Devices by causing such customers, subsidiaries,

and/or other end users to practice the claims in the '514 patent. With knowledge of the '514

patent, LG specifically intended for customers, subsidiaries, and/or other end users to acquire

and use the LG Devices in a manner than infringes one or more claims of the '514 patent. LG

instructed customers, subsidiaries, and/or other end users to acquire and utilize the LG Devices

in accordance with the 4G/LTE standard, with the knowledge and specific intent to encourage

and facilitate the infringement through the dissemination of the LG Devices and/or the creation

and dissemination of promotional and marketing materials, supporting materials, instructions,

product manuals, and/or technical information relating to the LG Devices and infringing uses

thereof.

48.     LG actively, knowingly, and intentionally contributed to the infringement of the

'514 patent by making, using, selling, offering to sell, and/or importing into the United States,

the LG Devices, with the knowledge that they are especially designed or adapted to operate in a

manner that infringes the '514 patent; with the knowledge that third parties, including those set

forth above, would continue to, either alone or in combination with LG, infringe the claims of

the '514 patent, and with the knowledge that the infringing technology in the accused products is

not a staple article of commerce suitable for substantial non-infringing use.

49.     An exemplary claim chart comparing independent claim 1 of the '514 patent to the use of an exemplary accused LG product Stylo 6 is attached as Exhibit 7.

50.     As LG has had knowledge of the '514 patent and LG's infringement of the '514 patent at least as early as August 15, 2018 (and likely much earlier due to LG's involvement in ETSI), and because LG failed to secure a license from IS despite several years of dialogue between the parties, LG's acts of infringement of the '514 patent are willful, and have caused a substantial damage to Celerity.

51.     As a result of LG's direct, indirect, and willful infringement of at least claim 1 of Celerity's '514 patent, Celerity has suffered monetary damages and under 35 U.S.C. § 284 is entitled to a monetary judgment in an amount adequate to compensate for LG's past infringement, together with enhanced damages, attorneys' fees, interest, and costs.

## COUNT II

## DEFENDANTS' INFRINGEMENT OF U.S. PATENT NO. 9,124,558

52.     Celerity restates and incorporates by reference all of the allegations made in the preceding paragraphs as though fully set forth herein.

53.     Celerity is the owner, by assignment, of U.S. Patent No. 9,124,558. A true copy of U.S. Patent No. 9,124,558 granted by the U.S. Patent & Trademark Office is attached as Exhibit 2.

54.     The '558 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

55.     LG has directly infringed, literally or under the doctrine of equivalents, one or more claims of the '558 patent by making, using, importing, selling, and/or offering for sale in the United States LG's cellular devices that are 4G/LTE compliant, in violation of 35 U.S.C. § 271(a).

56.     On information and belief, LG has had knowledge of the '558 patent and its

application to LG's 4G compliant devices and thus knew of LG's infringement, since July 12,

2011 when IS disclosed the '558 patent family to ETSI. LG had further knowledge of LG's

infringement of the '558 patent at least as early as August 15, 2018, when LG received the First

Letter explicitly identifying the '558 patent. LG had further knowledge of LG's infringement of

the '558 patent at least through claim charts provided to LG by IS.

57.     LG has also indirectly infringed, literally or under the doctrine of equivalents, the

'558 patent because LG, with knowledge of the '558 patent, induced and/or contributed to the

direct infringement of the '558 patent by its customers, subsidiaries, retailers, cellular network

providers, and/or other end users of the LG Devices by causing such customers, subsidiaries,

and/or other end users to practice the claims in the '558 patent. With knowledge of the '558

patent, LG specifically intended for customers, subsidiaries, and/or other end users to acquire

and use the LG Devices in a manner than infringes one or more claims of the '558 patent. LG

instructed customers, subsidiaries, and/or other end users to acquire and utilize the LG Devices

in accordance with the 4G/LTE standard, with the knowledge and specific intent to encourage

and facilitate the infringement through the dissemination of the LG Devices and/or the creation

and dissemination of promotional and marketing materials, supporting materials, instructions,

product manuals, and/or technical information relating to the LG Devices and infringing uses

thereof.

58.     LG actively, knowingly, and intentionally contributed to the infringement of the

'558 patent by making, using, selling, offering to sell, and/or importing into the United States,

the LG Devices, with the knowledge that they are especially designed or adapted to operate in a

manner that infringes the '558 patent; with the knowledge that third parties, including those set

forth above, would continue to, either alone or in combination with LG, infringe the claims of the '558 patent, and with the knowledge that the infringing technology in the accused products is not a staple article of commerce suitable for substantial non-infringing use.

59.     An exemplary claim chart comparing independent claim 1 of the '558 patent to the use of an exemplary accused LG product Stylo 6 is attached as Exhibit 8.

60.     As LG has had knowledge of the '558 Patent and LG's infringement of the '558 Patent at least as early as August 15, 2018 (and likely much earlier due to LG's involvement in ETSI), and because LG failed to secure a license from IS despite several years of dialogue between the parties, LG's acts of infringement of the '558 patent are willful, and have caused a substantial damage to Celerity.

61.     As a result of LG's direct, indirect, and willful infringement of at least claim 1 of Celerity's '558 patent, Celerity has suffered monetary damages and under 35 U.S.C. § 284 is entitled to a monetary judgment in an amount adequate to compensate for LG's past infringement, together with enhanced damages, attorneys' fees, interest, and costs.

## COUNT III

## DEFENDANTS' INFRINGEMENT OF U.S. PATENT NO. 8,223,708

62.     Celerity restates and incorporates by reference all of the allegations made in the preceding paragraphs as though fully set forth herein.

63.     Celerity is the owner, by assignment, of U.S. Patent No. 8,223,708. A true copy of U.S. Patent No. 8,223,708 granted by the U.S. Patent & Trademark Office is attached as Exhibit 3.

64.     The '708 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

65.     LG has directly infringed, literally or under the doctrine of equivalents, one or more claims of the '708 patent by making, using, importing, selling, and/or offering for sale in the United States LG's cellular devices that are 4G/LTE compliant, in violation of 35 U.S.C. § 271(a).

66.     On information and belief, LG has had knowledge of the '708 patent and its application to LG's 4G compliant devices and thus knew of LG's infringement, since July 12, 2011 when IS disclosed the '708 patent family to ETSI. LG had further knowledge of LG's infringement of the '708 patent at least as early as August 15, 2018, when LG received the First Letter explicitly identifying the '708 patent. LG had further knowledge of LG's infringement of the '708 patent at least through claim charts provided to LG by Via and IS.

67.     LG has also indirectly infringed, literally or under the doctrine of equivalents, the '708 patent because LG, with knowledge of the '708 patent, induced and/or contributed to the direct infringement of the '708 patent by its customers, subsidiaries, retailers, cellular network providers, and/or other end users of the LG Devices by causing such customers, subsidiaries, and/or other end users to practice the claims in the '708 patent. With knowledge of the '708 patent, LG specifically intended for customers, subsidiaries, and/or other end users to acquire and use the LG Devices in a manner than infringes one or more claims of the '708 patent. LG instructed customers, subsidiaries, and/or other end users to acquire and utilize the LG Devices in accordance with the 4G/LTE standard, with the knowledge and specific intent to encourage and facilitate the infringement through the dissemination of the LG Devices and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to the LG Devices and infringing uses thereof.

68.     LG actively, knowingly, and intentionally contributed to the infringement of the '708 patent by making, using, selling, offering to sell, and/or importing into the United States, the LG Devices, with the knowledge that they are especially designed or adapted to operate in a manner that infringes the '708 patent; with the knowledge that third parties, including those set forth above, would continue to, either alone or in combination with LG, infringe the claims of the '708 patent, and with the knowledge that the infringing technology in the accused products is not a staple article of commerce suitable for substantial non-infringing use.

69.     An exemplary claim chart comparing independent claim 1 of the '708 patent to the use of an exemplary accused LG product Stylo 6 is attached as Exhibit 9.

70.     As LG has had knowledge of the '708 patent and LG's infringement of the '708 patent at least as early as August 15, 2018 (and likely much earlier due to LG's involvement in ETSI), and because LG failed to secure a license from IS despite several years of dialogue between the parties, LG's acts of infringement of the '708 patent are willful, and have caused a substantial damage to Celerity.

71.     As a result of LG's direct, indirect, and willful infringement of at least claim 1 of Celerity's '708 patent, Celerity has suffered monetary damages and under 35 U.S.C. § 284 is entitled to a monetary judgment in an amount adequate to compensate for LG's past infringement, together with enhanced damages, attorneys' fees, interest, and costs.

## COUNT IV

## DEFENDANTS' INFRINGEMENT OF U.S. PATENT NO. 7,664,059

72.     Celerity restates and incorporates by reference all of the allegations made in the preceding paragraphs as though fully set forth herein.

73.     Celerity is the owner, by assignment, of U.S. Patent No. 7,664,059. A true copy of U.S. Patent No. 7,664,059 granted by the U.S. Patent & Trademark Office is attached as Exhibit 4.

74.     The '059 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

75.     LG has directly infringed, literally or under the doctrine of equivalents, one or more claims of the '059 patent by making, using, importing, selling, and/or offering for sale in the United States LG's cellular devices that are 4G/LTE compliant, in violation of 35 U.S.C. § 271(a).

76.     On information and belief, LG had knowledge the '059 patent and its application to LG's 4G compliant devices and thus knew of LG's infringement at least as early as August 15, 2018, when LG received the First Letter explicitly identifying the '059 patent and that LG's implementation of LTE infringed the '059 patent.  On information and belief, LG has also had knowledge of the '059 patent and its application to LG's 4G compliant devices implement and thus knew of LG's infringement, since August 15, 2005 when IS disclosed the '059 patent family to ETSI. LG had further knowledge of LG's infringement of the '059 patent at least through claim charts provided to LG by IS.

77.     LG has also indirectly infringed, literally or under the doctrine of equivalents, the '059 patent because LG, with knowledge of the '059 patent, induced and/or contributed to the direct infringement of the '059 patent by its customers, subsidiaries, retailers, cellular network providers, and/or other end users of the LG Devices by causing such customers, subsidiaries, and/or other end users to practice the claimed methods in the '059 patent. With knowledge of the '059 patent, LG specifically intended for customers, subsidiaries, and/or other end users to

acquire and use the LG Devices in a manner than infringes one or more claims of the '059

patent. LG instructed customers, subsidiaries, and/or other end users to acquire and utilize the

LG Devices in accordance with the 4G/LTE standard, with the knowledge and specific intent to

encourage and facilitate the infringement through the dissemination of the LG Devices and/or the

creation and dissemination of promotional and marketing materials, supporting materials,

instructions, product manuals, and/or technical information relating to the LG Devices and

infringing uses thereof.

78.     LG actively, knowingly, and intentionally contributed to the infringement of the

'059 patent by making, using, selling, offering to sell, and/or importing into the United States,

the LG Devices, with the knowledge that they are especially designed or adapted to operate in a

manner that infringes the '059 patent; with the knowledge that third parties, including those set

forth above, would continue to, either alone or in combination with LG, infringe the claims of

the '059 patent, and with the knowledge that the infringing technology in the accused products is

not a staple article of commerce suitable for substantial non-infringing use.

79.     An exemplary claim chart comparing independent claim 1 of the '059 patent to

the use of an exemplary accused LG product Stylo 6 is attached as Exhibit 10.

80.     As LG has had knowledge of the '059 patent and LG's infringement of the '059

patent at least as early as August 15, 2018 (and likely much earlier due to LG's involvement in

ETSI), and because LG failed to secure a license from IS despite several years of dialogue

between the parties, LG's acts of infringement of the '059 patent are willful, and have caused a

substantial damage to Celerity.

81.     As a result of LG's direct, indirect, and willful infringement of at least claim 1 of

Celerity's '059 patent, Celerity has suffered monetary damages and under 35 U.S.C. § 284 is

entitled to a monetary judgment in an amount adequate to compensate for LG's past

infringement, together with enhanced damages, attorneys' fees, interest, and costs.

## COUNT V

## DEFENDANTS' INFRINGEMENT OF U.S. PATENT NO. 8,804,756

82.     Celerity restates and incorporates by reference all of the allegations made in the

preceding paragraphs as though fully set forth herein.

83.     Celerity is the owner, by assignment, of U.S. Patent No. 8,804,756. A true copy of

U.S. Patent No. 8,804,756 granted by the U.S. Patent & Trademark Office is attached as Exhibit

5.

84.     The '756 patent is valid, enforceable, and was duly issued in full compliance with

Title 35 of the United States Code.

85.     LG has directly infringed, literally or under the doctrine of equivalents, one or

more claims of the '756 patent by making, using, importing, selling, and/or offering for sale in

the United States LG's cellular devices that are 4G/LTE compliant, in violation of 35 U.S.C. §

271(a).

86.     On information and belief, LG has had knowledge of the '756 patent and its

application to LG's 4G compliant devices and thus knew of LG's infringement, since July 12,

2011 when IS disclosed the '756 patent family to ETSI. LG had knowledge of the '756 patent at

least as early as August 15, 2018, when LG received the First Letter explicitly identifying the

'756 patent and that LG's implementation of LTE infringed the '756 patent. LG had further

knowledge of LG's infringement of the '756 patent at least through claim charts provided to LG

by Via and IS.

87.     LG has also indirectly infringed, literally or under the doctrine of equivalents, the

'756 patent because LG, with knowledge of the '756 patent, induced and/or contributed to the

direct infringement of the '756 patent by its customers, subsidiaries, retailers, cellular network providers, and/or other end users of the LG Devices by causing such customers, subsidiaries, and/or other end users to practice the claims in the '756 patent. With knowledge of the '756 patent, LG specifically intended for customers, subsidiaries, and/or other end users to acquire and use the LG Devices in a manner than infringes one or more claims of the '756 patent. LG instructed customers, subsidiaries, and/or other end users to acquire and utilize the LG Devices in accordance with the 4G/LTE standard, with the knowledge and specific intent to encourage and facilitate the infringement through the dissemination of the LG Devices and/or the creation and dissemination of promotional and marketing materials, supporting materials, instructions, product manuals, and/or technical information relating to the LG Devices and infringing uses thereof.

88.     LG actively, knowingly, and intentionally contributed to the infringement of the '756 patent by making, using, selling, offering to sell, and/or importing into the United States, the LG Devices, with the knowledge that they are especially designed or adapted to operate in a manner that infringes the '756 patent; with the knowledge that third parties, including those set forth above, would continue to, either alone or in combination with LG, infringe the claims of the '756 patent, and with the knowledge that the infringing technology in the accused products is not a staple article of commerce suitable for substantial non-infringing use.

89.     An exemplary claim chart comparing independent claim 1 of the '756 patent to the use of an exemplary accused LG product Stylo 6 is attached as Exhibit 11.

90.     As LG has had knowledge of the '756 patent and LG's infringement of the '756 patent at least as early as August 15, 2018 (and likely much earlier due to LG's involvement in ETSI), and because LG failed to secure a license from IS despite several years of dialogue

between the parties, LG's acts of infringement of the '756 patent are willful, and have caused a substantial damage to Celerity.

91.     As a result of LG's direct, indirect, and willful infringement of at least claim 1 of Celerity's '756 patent, Celerity has suffered monetary damages and under 35 U.S.C. § 284 is entitled to a monetary judgment in an amount adequate to compensate for LG's past infringement, together with enhanced damages, attorneys' fees, interest, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Celerity requests the Court grant the relief set forth below:

A.     Enter judgment that Defendants have directly infringed one or more claims of U.S. Patent Nos. 9,979,514; 9,124,558; 8,223,708; 7,664,059; and 8,804,756;

B.     Enter judgment that Defendants have indirectly infringed one or more claims of U.S. Patent Nos. 9,979,514; 9,124,558; 8,223,708; 7,664,059; and 8,804,756;

C.     Enter judgment that Defendants' acts of patent infringement are willful with respect to each Asserted Patent;

D.     Order Defendants to pay supplemental damages to Celerity, including interest, with an accounting, as needed, of all infringements and/or damages not presented at trial;

E.     Award Celerity increased damages and attorney fees pursuant to 35 U.S.C. §§ 284 and 285;

F.     Award Celerity the interest and costs incurred in this action; and

G.     Grant Celerity such other and further relief, including equitable relief, as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues deemed to be triable by a jury.

Dated: June 30, 2023                            Respectfully submitted,


                                                /s/ *Robert Christopher Bunt*

                                                Robert Christopher Bunt
                                                PARKER BUNT & AINSWORTH, PC
                                                Texas State Bar No. 00787165
                                                100 E. Ferguson Suite 418
                                                Tyler, Texas 75702
                                                Tel. (903) 531-3535
                                                rcbunt@pbatyler.com

                                                Michael T. Renaud (*pro hac vice* pending)
                                                Massachusetts BBO No. 629783
                                                MTRenaud@mintz.com
                                                Daniel Weinger (*pro hac vice* pending)
                                                Massachusetts BBO No. 681770
                                                DBWeinger@mintz.com
                                                Adam Rizk (*pro hac vice* pending)
                                                Massachusetts BBO No. 688305
                                                ARizk@mintz.com
                                                Simone Yhap
                                                Massachusetts BBO No. 711761
                                                SBYhap@mintz.com

                                                MINTZ LEVIN COHN FERRIS
                                                GLOVSKY AND POPEO PC
                                                One Financial Center
                                                Boston, MA 02111
                                                Tel: (617) 542-6000
                                                Fax: (617) 542-2241
                                                www.mintz.com

                                                M. Reza Dokhanchy (*pro hac vice* pending)
                                                RDokhanchy@mintz.com

                                                MINTZ LEVIN COHN FERRIS
                                                GLOVSKY AND POPEO PC
                                                3580 Carmel Mountain Road
                                                Suite 300
                                                San Diego, CA 92130
                                                Tel: (858) 314-1500
                                                Fax: (858) 314-1501

IRELL & MANELLA LLP
Jason Sheasby (CA #205455)
1800 Avenue of the Stars, Suite 900 Los
Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

*Counsel for Plaintiffs Celerity IP, LLC and
Innovative Sonic Ltd.*